**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 11-cv-00151-REB-KMT

LAWRENCE R. GILMORE,

       Applicant,

v.

SCOTT T. BRANDT,

       Respondent.

---

**ORDER**

---

**Blackburn, J.**

       The matters before me are (1) applicant's **Application for Confirmation of Arbitration Award Pursuant to the U.S. Arbitration Act, 9 U.S.C. § 9** [#1][1] filed January 21, 2011; and (2) **Respondent's Motion To Vacate Arbitration Award Pursuant to the U.S. Arbitration Act, Pursuant to 9 U.S.C. § 10** [#21] filed May 20, 2011.  I confirm the arbitration panel's award in favor of applicant, and consequently, deny respondent's motion to vacate.[2]

**I. JURISDICTION**

       I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] To the extent respondent requests an evidentiary hearing, I find such to be unnecessary to the resolution of the pending motions and, thus, deny the request.

## II.  STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that written arbitration agreements in transactions involving interstate commerce are "valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Federal policy strongly favors the arbitration of disputes and requires the federal courts to vigorously enforce agreements to arbitrate.  *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332,2337, 96 L.Ed.2d 185 (1987).

Nevertheless, because arbitration is entirely a matter of contract, a party cannot be required to arbitrate a dispute, which it has not agreed to submit to arbitration.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995).  Thus, the seminal issue is whether the parties agreed to arbitrate their dispute.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000). This determination pertains not only to the scope and substance of the issues in the case, but, where challenged, to the question of arbitrability itself.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995).

Although the question of arbitrability is resolved by reference to ordinary state law principles governing the formation of contracts, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  *Id.*, 115 S.Ct. at 1924 (quoting *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986)).  As the Supreme Court has explained further,

> [i]n this manner the law treats silence or ambiguity about the question "*who* (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about the question "*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement" – for in respect to this latter question the law reverses the presumption.

2

*Id.* (emphases in original).[3] If the parties agreed to allow the arbitrator to decide the issue of arbitrability, *vel non*, the standard of review of the arbitrator's determination of that issue is as highly deferential as that applied to his decisions regarding substantive issues within the scope of his authority. *Id.* at 1923-24. Conversely, if the parties did not agree to submit to arbitration the issue of arbitrability, then the court decides that issue. *Id.* at 1924.

In either event, if it is determined that the parties agreed to arbitration and that the issue in dispute falls within the scope of their agreement, the only remaining question is whether any statute or policy renders the claims non-arbitrable. *Mitsubishi Motors Corp.*, 105 S.Ct. at 3355; *Williams*, 203 F.3d at 764. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

A federal court should confirm an arbitrator's award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of" the FAA. 9 U.S.C. § 9. Any party to the arbitration may apply to vacate the arbitration award where the arbitrators exceeded their

---

[3] The Court explained the distinction further:

> [T]his difference in treatment is understandable. The latter question arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration. And, given the law's permissive policies in respect to arbitration, one can understand why the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter. On the other hand, the former question – the "who (primarily) should decide arbitrability" question – is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

*First Options*, 115 S.Ct. at 1924-25 (internal citations omitted).

3

powers.  *See id.* § 10.  Nevertheless, "the standard of review of arbitral awards is among the narrowest known to law."  *Brown v. Coleman Co.*, 220 F.3d 1180, 1182 (10th Cir. 2000), *cert. denied*, 121 S.Ct. 1191 (2001).  "Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances."  *Burlington Northern and Santa Fe Railway Co. v. Public Service Co. of Oklahoma*, 636 F.3d 562, 567 (10th Cir. 2010) (citations and internal quotation marks omitted).

### III.  ANALYSIS

This lawsuit arises from a soured investment deal.  Applicant Lawrence Gilmore invested some $92,000 in Diversified Lending Group, Inc. ("DLG"), a California corporation, at the suggestion of respondent, Scott Brandt, a representative of Lighthouse Capital Corporation ("LIghthouse").  Gilmore alleged that the DLG investment was, in fact, a Ponzi scheme and that his entire investment was decimated.

His claims in arbitration against Brandt, among others, were determined favorably to him by a Financial Industry Regulatory Authority ("FINRA") panel of arbitrators.  By this lawsuit, Gilmore seeks to enforce that award.  Brandt has moved to vacate it, maintaining that the FINRA arbitrators lacked jurisdiction over the dispute because he never agreed to submit any dispute with Gilmore to arbitration.

In order to file a Statement of Answer in the arbitration proceeding, Brandt was required to sign a FINRA Arbitration Submission Agreement.  That document provides that the parties will "submit the present matter in controversy . . . to arbitration in accordance with" FINRA's rules and procedures, that they "agree to be bound by [FINRA's] procedures and rules," "to abide and perform any award(s) rendered[,] . . . and that a judgment . . . may be entered upon such award(s)."  (Applicant Reply App., Exh. 4 at ¶¶ 1, 2 & 4 at 1 [#22], filed June 6, 2011.)  Brandt, however, appended a statement to this document "reserv[ing] all rights to challenge the jurisdiction of FINRA in this Arbitration at a later date."  (*See id.* at 1.)  In addition, he raised this

4

jurisdictional objection in both his answer and his substantive pre-hearing brief, as well as in a post-judgment challenge seeking expungement.  The arbitration panel did not address any of these arguments directly, but did note in its decision that any relief not specifically addressed therein was denied.  (*See id.*, Exh. 7.)

Although procedurally, it would have been more proper for Brandt to seek a stay of the arbitration in order to contest the issue of arbitrability, *see Mays v. Lanier Worldwide, Inc.*, 115 F.Supp.2d 1330, 1342 (M.D. Ala., 2000), given the presumption against agreements to arbitrate arbitrability, *see First Options*, 115 S.Ct. at 1924, and the repeated nature of Brandt's challenge to the jurisdiction of the arbitration panel, I find that he sufficiently preserved his objection to arbitrability.  *See Saneii v. Robards*, 289 F.Supp.2d 855, 861-62 (W.D. Ky 2003); *Mays*, 115 F.Supp.2d at 1343.  This does not mean that the dispute was not arbitrable, but simply that it falls to me to decide whether it was.  *See Burlington Northern*, 636 F.3d at 568.

As noted above, the determination whether a claim is arbitrable turns on whether the parties agreed to arbitrate their dispute.  *Mitsubishi Motors Corp.*, 105 S.Ct. at 3353; *Williams*, 203 F.3d at 764.  Brandt maintains that he never entered into any such agreement with Gilmore.  However, pursuant to a Uniform Application for Securities Industry Registration or Transfer ("Form U-4"), which Brandt executed when he first sought licensure to sell securities, Brandt did, in fact, agree to arbitration of a dispute such as this one.  The Form U-4, under the section entitled "Acknowledgment and Consent," provides as follows:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs [Self Regulatory Organizations] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and than any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Applicant Reply App., Exh. 1 ¶¶ 15A(5) at 13.)  The SRO specified in Section 4 of Brandt's

Form U-4 is the National Association of Securities Dealers ("NASD"), the predecessor to FINRA.

*See Cory v. Allstate Insurance*, 583 F.3d 1240, 1242 n.1 (10th Cir. 2009).   Thus, arbitration of

Gilmore's dispute with Brandt will be required if it would be required under FINRA rules.[4]

Rule 12200 of the FINRA Code of Arbitration Procedure provides:

> Parties must arbitrate a dispute under the Code if:
>
> - Arbitration under the Code is either
>
>   (1) required by a written agreement, or
>   (2) requested by the customer;
>
> - The dispute is between a customer and a member or associated person of a member; and
>
> - The dispute arises in connection with the business activities of the member or the associated person[.]

(Applicant Reply App., Exh. 5.)  There is little question here but that this clause is properly

classified as a broad one.  *See Cummings v. FedEx Ground Package System, Inc.,* 404 F.3d

1258, 1261 (10th Cir. 2005).  The expansive language purports to apply generally to any type of

customer dispute arising in connection with the business activities of the member.  *See id.*

(noting that broad arbitration clauses are those that "refer all disputes arising out of a contract to

arbitration") (citation and internal quotation marks omitted).  Because the arbitration clause is

broad, "there arises a presumption of arbitrability."  *Id.* (citation and internal quotation marks

omitted).

Two further preconditions under Rule 12200 are that arbitration be "requested by the

customer" and concern a "dispute . . . between a customer and a member or associated person

of a member."  Rule 12100(i) of the FINRA Code of Arbitration Procedure simply defines

---

[4]   So long as Gilmore is found to be a "customer," as discussed more fully, *infra*, the fact that he was not a signatory to the Form U-4 is irrelevant, as he clearly would be an intended third-party beneficiary of Brandt's agreement to arbitrate.  *See Kidder, Peabody & Co. v. Zinsmeyer Trusts Partnership*, 41 F.3d 861, 863-64 (2nd Cir. 1994); *Scobee Combs Funeral Home, Inc. v. E.F. Hutton & Co.*, 711 F.Supp. 605, 607 (S.D. Fla.1989)

"customer" as someone who is not a broker or a dealer.  Courts have taken different approaches to fleshing out this definition.  Some do not require a direct contractual or transactional relationship with the member firm, *see, e.g.*, *Vestax Securities Corp. v. McWood*, 280 F.3d 1078, 1081 (6th Cir. 2002); *John Hancock Life Insurance Co. v. Wilson*, 254 F.3d 48, 51 (2nd Cir. 2001), while others require a more direct relationship, *see, e.g.*, *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 773 (8th Cir. 2001) (NASD rules did not require arbitration where member firm only provided financial advice, but not investment or brokerage related services, to plaintiff).  *See also Metlife Securities, Inc. v. Pizzano*, 2010 WL 2545170 at *3-*4 (D.N.J. June 18, 2010) (citing cases).  In general, however, "the courts are guided by the notion that the term 'customer' should not be too narrowly construed, nor should the definition upset the reasonable expectations of FINRA members." *Herbert J. Sims & Co. v. Roven*, 548 F.Supp.2d 759, 764 (N.D. Cal. 2008).

Given those standards, and under either a broad or more narrow definition of the term, there can be no doubt that Gilmore was a customer within the meaning of Rule 12200.  Brandt's attempt to cabin his liability by arguing that Gilmore was never *his* customer, but was, instead, a customer of DLG, or that he never received any commission from Gilmore's investment, is insupportable under both the spirit and the letter of the rule.  Instead, "[i]f an 'associated person' of the member firm induces, or shepherds, the investment, then the investor is also likely a customer of that firm." *Id.*; *see also John Hancock Life Insurance Co.*, 254 F.3d at 59 (customer relationship with an associated person sufficient to establish customer relationship with member firm); *JHS Capital Holdings v. Deel*, 2010 WL 5296928 at *3 (E.D. Mich. Dec. 20, 2010) (investors qualified as "customers" under FINRA Rule 12100(i) even though they were not defendant's direct customers).[5]

---

[5] Brandt does not, and could not, argue that he is not an "associated person," given his status as an agent of DLG.  (*See* Applicant Reply App., Exh. 1 at 10.)  *See also* FINRA Code of Arbitration

The final issue is whether the dispute arises in connection with the business activities of the member or the associated person.  In this regard,

> [d]isputes which involve claims that are utterly unrelated to the securities industry should not fall under this rule; instead, a court must require arbitration of disputes only if they arise out of the business activities of an individual *as* an associated person of a FINRA member.  With this interpretation, FINRA and the registered representatives under its jurisdiction are assured that arbitration will pertain to matters with some nexus to the activity actually regulated by FINRA.

*Lorbietzki v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2011 WL 855354 at *3 (D. Nev. March 9, 2011 (internal citations and quotation marks omitted; emphasis in original).  There can be no question but that claims such as Gilmore brought here related to the recommendation of an investment in particular securities, "fall[] within the class of disputes wherein the issues are reasonably related to FINRA regulated activities."  *Id.*  FINRA exists to regulate dealings in securities:

> [FINRA] wears two institutional hats:  it serves as a professional association, promoting the interests of it[s] members . . . and it serves as a quasi-governmental agency, with express statutory authority to adjudicate actions against members who are accused of illegal securities practices and to sanction members found to have violated the Exchange Act or Securities and Exchange Commission . . . regulations issued pursuant thereto.

*National Association of Securities Dealers, Inc. v. SEC*, 431 F.3d 803, 804 (D.C. Cir. 2005) (citing 15 U.S.C. § 78o-3(b)(7)).[6]  *See also Sykes v. Escueta*, 2010 WL 4942608, 1 (N.D. Cal.

---

Procedure, Rule 12100(r) (defining "person associated with a member" as a "natural person who is registered . . . under the Rules of FINRA" and a "natural person engaged in the . . . securities business who is directly or indirectly controlling or controlled by a member . . . .").

[6]  The statutory authority for and historical genesis of FINRA was explained in detail by the District of Columbia Circuit:

> The Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq. (Exchange Act), "provides a comprehensive system of federal regulation of the securities industry."  *Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676, 680 (5th Cir. 1985). The Maloney Act, Pub.L. No. 75–719, 52 Stat. 1070 (1938) (amending the Exchange Act, 15

Nov. 29, 2010); **Thomas v. Metropolitan Life Insurance Co.**, 2009 WL 2778663 at *6 n.12

(W.D. Okla. Aug. 31, 2009), **aff'd**, 631 F.3d 1153 (10th Cir. 2011).  Brandt's attempt to parse the

issue more finely, by arguing that the dispute must relate to Brandt's activities with Lighthouse

and not merely to Gilmore's investment in DLG, not only overstates the facts regarding the

separation of interest between Lighthouse and DLG (**see** Applicant Reply App., Exh. 9), and

Brandt's own relationship with DLG (**see id.**, Exh. 1 at 10), but also would impose a more

demanding standard than the rule itself requires.

Thus, I find and conclude that this dispute is arbitrable pursuant to FINRA Rule 12200.

Accordingly, the arbitration panel's decisions, both as to the scope of its jurisdiction and on the

merits, are entitled to "extreme deference."  **Burlington Northern**, 636 F.3d at 568.  Brandt

presents no argument that would undermine the panel's merits determination.  As for its implicit

finding that it had jurisdiction, the discussion above plainly shows that conclusion to be

---

U.S.C. §§ 78 o et seq.), "established extensive guidelines for the
formation and oversight of self-regulatory organizations, such as the
NASD, and the registered stock exchanges, including the New York
Stock Exchange (N.Y.S.E.) and the American Stock Exchange."  **Austin
Mun. Sec.**, 757 F.2d at 680.  Pursuant to the Maloney Act, any
association of securities broker-dealers seeking to register as a "national
securities association" must "fil[e] with the [SEC] an application for
registration ... containing the rules of the association."  15 U.S.C. §§
78o–3(a).  An association must "comply with the [Exchange Act] and its
own rules," **id.** § 78s(g)(1)(A), "enforce compliance ... by its members and
persons associated with its members," id., and maintain registration and
disciplinary data of its members, **id.** § 78o–3(i).  Further, although a
national securities association is a self-regulatory entity, it remains
subject to the SEC's oversight and control.  **Id.** § 78s(b).  For example,
any proposed change in the association's rules must be filed with the
SEC and "[n]o proposed rule change shall take effect unless approved by
the [SEC]."  **Id.** § 78s(b)(1).  The SEC may "abrogate, add to, and delete
from . . . the rules of a self-regulatory organization . . . as the [SEC]
deems necessary or appropriate to insure the fair administration of the
self-regulatory organization [or] to conform its rules to requirements of
this chapter."  **Id.** § 78s(c).

FINRA, as NASD's successor, is "the only officially registered 'national
securities association' under [the Exchange Act]."

**Karsner v. Lothian**, 532 F.3d 876, 879-80 (D.C. Cir. 2008) (final internal citation omitted).

supported by FINRA Rule 12200.  For these reasons, I grant Gilmore's application to enforce

the arbitration award and deny Brandt's motion to vacate it.

In addition, Gilmore requests his attorney fees incurred in defending against Brandt's

challenge to the arbitration award.[7]  That request is supported by the Colorado Securities Act as

interpreted by the Colorado courts.  ***See Barrett v. Investment Management Consultants,***

***Ltd.***, 190 P.3d 800, 805 (Colo. App. 2008) (interpreting

§ 11-51-604, C.R.S.).  Accordingly, I find and conclude that Gilmore is entitled to an award of

his reasonable attorney fees incurred in this action.

**THEREFORE, IT IS ORDERED** as follows:

1.  That applicant Lawrence R. Gilmore's **Application for Confirmation of Arbitration**

**Award Pursuant to the U.S. Arbitration Act, 9 U.S.C. § 9** [#1] filed January 21, 2011, is

**GRANTED**;

2.  That **Respondent's Motion To Vacate Arbitration Award Pursuant to the U.S.**

**Arbitration Act, Pursuant to 9 U.S.C. § 10** [#21] filed May 20, 2011, is **DENIED**;

3.  That the judgment of the arbitration panel is **CONFIRMED**;

4.  That judgment **SHALL ENTER** on behalf of applicant, Lawrence R. Gilmore, against

respondent, Scott T. Brandt, on applicant's **Application for Confirmation of Arbitration**

**Award Pursuant to the U.S. Arbitration Act, 9 U.S.C. § 9** [#1] filed January 21, 2011, as to

applicant's request to confirm the arbitration award; provided, that the judgment **SHALL BE** with

prejudice;

5.  That applicant is **AWARDED** damages and fees as follows:

a.  Compensatory damages in the amount of $106,024.68 with interest, to accrue

at the rate of 8% compounded annually from December 16, 2010, until paid in

---

[7]  Brandt does not acknowledge, much less address, the request for attorney fees.

full;

   b.  Attorney fees in the amount of $35,341.56 incurred in arbitration; and

   c.  A reasonable amount of attorney fees incurred in this lawsuit;

6.  That applicant **MAY FILE** a motion for attorney fees in the time and manner prescribed by Fed. R. Civ. P. 54(d)(2) and D.C.COLO.LCivR 7.1C.and 54.3; and

7.  That applicant is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated October 28, 2011, at Denver, Colorado.

                                      **BY THE COURT:**

                                      Robert E. Blackbum
                                      United States District Judge